| | |
|---|---|
| 1 | G. HOPKINS GUY (SBN 124811) |
| 2 | hop.guy@bakerbotts.com |
|   | JON V. SWENSON (SBN 233054) |
| 3 | jon.swenson@bakerbotts.com |
|   | KARINA A. SMITH (SBN 286680) |
| 4 | karina.smith@bakerbotts.com |
|   | ELIZABETH K. BOGGS (SBN 280555) |
| 5 | betsy.boggs@bakerbotts.com |
|   | JOHN F. GAUSTAD (SBN 279893) |
| 6 | john.gaustad@bakerbotts.com |
|   | BAKER BOTTS L.L.P. |
| 7 | 1001 Page Mill Road, Suite 200 |
|   | Palo Alto, California  94304 |
| 8 | Telephone:     +1-650-739-7500 |
|   | Facsimile:      +1-650-739-7699 |

*Attorneys for Plaintiff BrightEdge Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRIGHTEDGE TECHNOLOGIES, INC., | Case No. 3:14-cv-01009-WHO-MEJ |
| Plaintiff, | **DECLARATION OF JON V. SWENSON IN SUPPORT OF BRIGHTEDGE TECHNOLOGIES, INC.'S NOTICE OF AND REQUEST FOR TELEPHONIC CONFERENCE OR OTHER RELIEF REGARDING PLAINTIFF'S FAILURE TO PARTICIPATE IN DISCOVERY PROCEDURES** |
| v. | |
| SEARCHMETRICS GMBH and SEARCHMETRICS, INC., | |
| Defendants. | |
| | **DISCOVERY MATTER** |

I, Jon V. Swenson, hereby declare as follows:

1. I am a partner at the law firm of Baker Botts, LLP, and counsel for plaintiff BrightEdge Technologies, Inc. I have personal knowledge of the facts stated herein and if called as a witness, could and would testify thereto.

2. **BrightEdge attempted to coordinate discovery with Searchmetrics while Searchmetrics refused to produce documents:**

3. Plaintiff BrightEdge Technologies, Inc. served its first set of joint Requests for Production (RFPs) on defendants Searchmetrics GmbH and Searchmetrics Inc. (collectively Searchmetrics) on May 15.

4. On June 7, before Searchmetrics's responses to the RFPs were due, BrightEdge proposed via e-mail an exchange of information about the parties' ESI (such as information regarding Searchmetrics's email custodians, computer servers, email routing, information storage practices, employees involved with the accused products, functionality of its sales database, and person most knowledgeable regarding ESI) in order to facilitate discussions regarding possible limitations on electronic discovery. A true and correct copy of this e-mail is attached as **Exhibit 1**. Searchmetrics responded that it would consider BrightEdge's proposal.

5. On June 9, BrightEdge asked Searchmetrics if it could exchange this information the next day and meet and confer during the week of June 9-13. Searchmetrics responded on June 10 that it would meet and confer on June 11 but would not have any information to exchange until later in the week at the earliest. BrightEdge responded that meeting and conferring was not necessary before exchanging this information and also stated that BrightEdge expected that Searchmetrics's responses to BrightEdge's RFPs, due June 16, would comply fully with the federal and local rules.

6. On June 12, BrightEdge reminded Searchmetrics that it was awaiting Searchmetrics's response with information about its ESI and asked for an in-person meet and confer on June 16 if Searchmetrics refused to produce ESI. Searchmetrics did not respond.

7. Searchmetrics provided its objections and responses to BrightEdge's RFPs on June 16 and produced no documents. In response to each of fourteen of BrightEdge's unique requests

for production, Searchmetrics stated it would respond solely by running a keyword search for the word "BrightEdge."

8. **BrightEdge attempted to confer with Searchmetrics regarding its deficient production for nearly a month while Searchmetrics refused to provide its positions or produce documents:**

9. On June 17, BrightEdge informed Searchmetrics that its responses were deficient and requested an in-person meet and confer on those issues that day, as it informed Searchmetrics it would if Searchmetrics did not agree to produce ESI, including email. Searchmetrics agreed to meet in person on June 20.

10. In the meantime, on June 18, Searchmetrics stated it would reply to BrightEdge's June 7 proposal regarding exchange of information about ESI by Friday, June 27.

11. On June 19, BrightEdge asked Searchmetrics to confirm that the meet and confer the next day would cover all issues, including ESI. Searchmetrics responded that it would not meet and confer on ESI issues before June 26, when Searchmetrics' counsel and Searchmetrics planned to discuss the issues. BrightEdge nonetheless met and conferred with Searchmetrics in person on other discovery issues.

12. On June 20, the parties met at the offices of Searchmetrics's counsel but ran out of time to discuss all the issues with Searchmetrics's deficient responses. BrightEdge requested another time for a further in-person meet and confer the following week. Searchmetrics did not provide another date.

13. On June 24, in the absence of a further date to meet and confer in person, BrightEdge provided Searchmetrics with a chart detailing the problems with Searchmetrics' responses to BrightEdge's RFPs and again requested a meet and confer. In that chart, BrightEdge pointed out the severe deficiencies in Searchmetrics's proposed responses. BrightEdge again requested that Searchmetrics provide its responses to BrightEdge's June 7 proposal about ESI and reminded Searchmetrics that it had agreed to respond to BrightEdge's proposal that week. BrightEdge also proposed discussing these issues on the phone soon after.

14. After Searchmetrics informed BrightEdge that it could not discuss these issues on

1  June 27 or at the time BrightEdge proposed on June 30, the parties agreed to discuss the general
2  ESI issues on the phone July 1. During that telephonic meet and confer, Searchmetrics informed
3  BrightEdge that it was willing to provide some information about ESI orally, including the number
4  of current Searchmetrics employees, a high-level description of each employee's job function, and
5  the location of Searchmetrics' email servers, but that it would not provide all the requested
6  information or provide anything in writing.

7      15.   On July 2, BrightEdge sent an e-mail to Searchmetrics memorializing the
8  telephonic meet and confer of July 1, asking that the parties continue discussing this issue during a
9  call scheduled for that day. BrightEdge informed Searchmetrics again that it was willing to provide
10 information about ESI if Searchmetrics would do the same.

11     16.   On July 2, the parties also met and conferred over the phone regarding the deficient
12 responses to the RFPs but were only able to discuss Searchmetrics's response to RFP No. 1 before
13 counsel for Searchmetrics had to end the conversation. During the telephonic meet and confer on
14 July 2, BrightEdge took the position that there are no unique limits on electronic discovery.
15 Searchmetrics stated that it intended to seek a discovery order limiting production of ESI.

16     17.   During the July 2 call, Searchmetrics agreed to inform BrightEdge by July 11 what
17 information Searchmetrics would be willing to produce regarding its customer relationship
18 management database. Searchmetrics also agreed to provide its positions in response to the chart
19 BrightEdge had provided detailing the asserted deficiencies with Searchmetrics's responses before
20 the parties scheduled another time to meet and confer.

21     18.   On July 5, BrightEdge sent an e-mail memorializing the meet and confer and
22 requested a further meet and confer on electronic discovery (as well as on the requests for
23 production) early in the next week. BrightEdge requested Searchmetrics's positions regarding its
24 RFP responses, in response to BrightEdge's asserted deficiencies and reminded Searchmetrics that
25 the parties agreed to discuss Searchmetrics's RFP responses further after Searchmetrics provided
26 this information. Searchmetrics responded by e-mail on July 8 stating that it would reply to
27 BrightEdge's communications but did not provide a date to meet and confer further, nor did it
28 provide its positions on the issues BrightEdge identified in its chart (sent June 24).

19. On July 10, BrightEdge again asked for Searchmetrics's positions regarding its RFP responses and asked Searchmetrics to either provide its positions by July 11 or inform BrightEdge if it refused to provide its positions. Searchmetrics did not respond.

20. **Searchmetrics refused to meet and confer in person on these issues:**

21. On July 15, BrightEdge informed Searchmetrics that based on its failure to respond, BrightEdge intended to seek the assistance of the Court in resolving these issues. After exchanging several e-mails, Searchmetrics offered to meet and confer over the phone on July 16. BrightEdge again asked Searchmetrics to meet and confer in person (as this Court's orders require) and agreed to meet during the time Searchmetrics proposed. BrightEdge asked Searchmetrics to provide its positions on its RFP responses as it had previously represented it would do. BrightEdge also asked that for any issues that the parties could not resolve, that BrightEdge would provide Searchmetrics with a portion of a joint letter brief and that Searchmetrics would provide its portion within four calendar days afterwards. A true and correct copy of this e-mail is attached as **Exhibit 2**.

22. Searchmetrics refused to meet in person, stating in an e-mail, "We cannot agree to arbitrary meet and confer requirements unilaterally created and imposed by BrightEdge." Searchmetrics also refused to provide its positions on the requests for production.

23. Searchmetrics has still not provided the information on what it intends to produce from its customer relationship management database.

24. Searchmetrics has yet to produce any documents in this case.

25. BrightEdge is prepared to make a substantial production of approximately 17,200 electronically stored documents, including e-mail.

26. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:   July 16, 2014                         */s/ Jon V. Swenson*
                                               Jon V. Swenson