UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIGHTEDGE TECHNOLOGIES, INC.,

    Plaintiff,

v.

SEARCHMETRICS, GMBH., et al.,

    Defendants.

Case No. 14-cv-01009-WHO   (MEJ)

**DISCOVERY ORDER**

Re: Dkt. No. 48

## INTRODUCTION

Pending before the Court is the parties' Joint Discovery Dispute Letter, filed July 18, 2014. Jt. Ltr., Dkt. No. 48. In the joint letter, Plaintiff BrightEdge Technologies, Inc. ("BrightEdge") seeks an order compelling Defendants Searchmetrics GmbH ("SG") and Searchmetrics, Inc. ("SI") (collectively "Searchmetrics") to respond to interrogatories and requests for production that seek information Searchmetrics claims it must withhold on the basis of international privacy protection. Jt. Ltr. at 1. Searchmetrics requests an order from the Court finding that it need not produce "personal data" in violation of German and EU privacy laws or delay production until a need for such "personal data" is shown. *Id*.

## BACKGROUND

BrightEdge provides search engine optimization ("SEO") and analytical tools. *Id*. BrightEdge has accused Searchmetrics of infringing five U.S. patents related to SEO technology. *Id*. SG is a German limited liability company with its principal place of business in Berlin, Germany. *Id*. SI is a Delaware corporation with its principal place of business in San Mateo,

1  California and is the U.S. subsidiary of SG.  *Id.*  SI is a wholly owned subsidiary of its German
2  parent, SG.  Jt. Ltr. at 3.  SI offers SG's SEO products in the United States.  *Id*.
3  Since SG was founded in Germany, its documents and email communications are held
4  there.  *Id.*  When SI was created, its documents and emails were, and continue to be, held in
5  Germany on the same server as that which stores SG's data.  *Id*. at 3-4.  Consequently,
6  Searchmetrics contends that privacy laws regarding personal data held in Germany and the EU
7  apply to the transfer of SI's e-mails, documents, and data.  *Id*.  Further, Searchmetrics argues that
8  if it were required to produce "personal data" in this litigation, Searchmetrics would be forced to
9  violate several German and EU privacy laws and could be subject to criminal penalties including
10 substantial fines and/or jail time.  *Id.*

**DISCUSSION**

On May 14, 2014, BrightEdge served Requests for Production ("RFP") and Interrogatories on Searchmetrics.  *Id.* at 3.  Searchmetrics responded on June 16, 2014.  *Id*.  Among other objections, Searchmetrics asserted the following objection to the entire set of interrogatories and all but one RFP: "To the extent BrightEdge seeks personal data and information held by Searchmetrics in Germany, Searchmetrics objects to production of [the] data and information to the extent such production would conflict with" German and European privacy laws. [1]  *Id*., Ex A at ¶ 15.

BrightEdge's position is that Searchmetrics should be compelled to produce the requested discovery for several reasons.  First, the information sought is highly relevant to the issues in this case and is in the possession, custody and control of both SI and SG.  *Id*. at 2.  Second, the information is already available and actually in use in the U.S., rendering any foreign privacy laws inapplicable.  *Id.*  Third, even if the foreign privacy laws apply, balancing the relevant factors

---

[1] Searchmetrics objected to the following categories of information: (1) Information about the development, functionality, use and modifications made to the accused products (*see* Interrog. Nos. 1, 8, and 14; RFP 8, 10, 24, 39 and 48); (2) Information about reasonable royalty damages (see Rogs 2, 3, 4, 5, 6, 8, 9, 10, 11, and 12; RFP 6, 22, 23, 25, 26, 27, 28, 34, 44, and 45); (3) Information about lost profit damages (*see* Interrog. Nos. 2, 3, 4, 5, 6, 8, 9, 10, 11, and 12; RFP 6, 22, 23, 28, 34, and 45); (4) Information about copying, willfulness and nonobviousness (*see* Interrog. Nos. 1, 3, 4, 5, 6, 8, 12, 13, and 14; RFP 6, 25, 28, and 31); and (5) Information about document retention (*see* Interrog. No. 13; RFP 47)

favors production since Searchmetrics uses this information in the U.S. to sell products and services to U.S. customers that are alleged to infringe U.S. patents. *Id*.

Searchmetrics contends that privacy laws regarding personal data held in Germany and the EU apply to its subsidiary SI's e-mails and other documents because that data is held in Germany.[2] *Id*. at 2-3. It maintains that if it were required to produce "personal data" in this litigation, Searchmetrics would be forced to violate several German and EU privacy laws and could be subject to criminal penalties including substantial fines and/or incarceration. *Id*. at 3. Searchmetrics further asserts that any production of "personal data" should be delayed until after a finding that it has infringed a patent, or at least until the filing of potentially dispositive motions after claim construction. *Id*. at 4. Searchmetrics also argues generally that the requested discovery is overbroad, harassing, and fails to comply with the Northern District Model Order Regarding Discovery of Electronically Stored Information for Patent Cases ("Model Order"). Searchmetrics further suggests that the Court should require BrightEdge to establish infringement of valid patents before ordering them to produce "personal data" and other sensitive information.[3] *Id*.

In determining whether the documents at issue are protected from disclosure under German and European Union law, the Court notes that "[t]he party relying on foreign law has the burden of showing such law bars production [of documents]." *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 377 (C.D. Cal. 2002) (citations omitted). However, even where a party seeks to prevent disclosure of documents based on a foreign law, "it is well settled that such [foreign] statutes do not deprive an American court of the power to order a party subject to its

---

[2] Searchmetrics identifies three laws that it asserts prevent it from disclosing personal data in this litigation: (1) Directive 95/46/EC of the European Parliament & Counsel of 24 October 1995 on the Protection of Individuals With Regard to the Processing of Personal Data & on the Free Movement of Such Data; (2) the German Federal Data Protection Act (Bundesdatenschutzgesetz, "BDSG") published December 20, 1990 (BCB1.I 1990 S.2954); and (3) the German Telecommunications Act (Telekommunikationsgesetz, "TKG"), published on July 25, 1996, as amended June 26, 2004. *Id*. at 4.

[3] The Court is mindful that German law bifurcates patent infringement actions into a liability stage and a damages stage, and that a plaintiff proceeding under German law is not entitled to damages discovery until it prevails in the liability phase. *See Siemens AG v. Western Digital Corp*., 2013 WL 5947973, at *3-4 (C.D. Cal. Nov. 4, 2013). However, this case is not governed by German law.

3

1    jurisdiction to produce evidence even though the act of production may violate that statute."

2    *Societe Nationale Industrielle Aerospatiale v. U. S. District Court*, 482 U.S. 522, 544 fn 29 (1987)

3    (citing *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*,

4    357 U.S. 197, 204-06 (1958)). Rather, courts employ a multi-factor balancing test set forth in the

5    Restatement (Third) of Foreign Relations Law section 442(1)(c) to evaluate the interests of the

6    United States and the party seeking the discovery against the foreign state's interest in secrecy.

7    *Aerospatiale* , 482 U.S. at 543-44 fn 28. The relevant factors include:

> (1) the importance to the ... litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

14    *Id*. This list of factors is not exhaustive and includes "the extent and the nature of the hardship

15    that inconsistent enforcement would impose upon the person, ... [and] the extent to which

16    enforcement by action of either state can reasonably be expected to achieve compliance with the

17    rule prescribed by that state." *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468,

18    1475 (9th Cir. 1992) (internal citations and quotations omitted).

19    **A.   The Importance of the Information**

20    BrightEdge argues that information about Searchmetrics' infringement, including willful

21    infringement, and resulting damages, are central issues in this case. Jt. Ltr. at 3. Searchmetrics

22    counters that BrightEdge has not specified how the requested information is relevant to these

23    issues. *Id*. at 5. Searchmetrics maintains that in a patent infringement case, the technical

24    documents showing the accused functionality of the asserted claims of the Asserted Patents are

25    most important, and they have already agreed to produce this information. *Id*. Searchmetrics

26    argues that BrightEdge's request would "cover personal data going back to 2007 that would cover

27    hundreds of thousands of e-mails not relevant to this case." *Id.* However, courts undertaking the

28    comity analysis have found that "information regarding a party's assets for purposes of enforcing a

1  judgment is crucial and the importance weighs in favor of compelling disclosure." *NML Capital,*
2  *Ltd. v. Republic of Argentina*, 2013 WL 491522, at *10 (S.D.N.Y. Feb. 8, 2013) (citing *Richmark*,
3  959 F.2d at 1475; *Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8,
4  2010)).  Here, discovery as to damages, royalty and willfulness are relevant to prosecution of a
5  patent infringement case.

**B.     The Degree of Specificity of the Request**

Under this factor, "the Court examines the extent to which the discovery requests will burden the party from whom production is sought as '[g]eneralized searches for information, disclosure of which is prohibited under foreign law, are discouraged.'" *AstraZeneca LP v. Breath Ltd.*, 2011 WL 1421800, at *13 (D.N.J. Mar. 31, 2011) (citing *In re Air Crash at Taipei*, 211 F.R.D. at 378).  A court must limit the frequency and extent of discovery that can be obtained from sources less burdensome or less expensive, or if it determines that the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b).

BrightEdge seeks discovery regarding: (1) the development, functionality, use and modifications made to the accused products; (2) reasonable royalty damages; (3) lost profit damages; (4) copying, willfulness, and nonobviousness; and (5) document retention. Searchmetrics has maintained objections on the grounds that the RFP and Interrogatories are burdensome because they are "overly broad as to subject and time," and "are not calculated to lead to the discovery of admissible evidence" related to patent infringement.  Jt. Ltr. at 4; *see also* Admin. Mtn. to Seal, Ex. A ("Interrogs"), Dkt. No. 53-2; Decl. of Jon V. Swenson in Supp't of Jt. Ltr., Ex. B ("RFP"), Dkt. No. 51-1.  Searchmetrics essentially argues that the requests seek too much information and that it is not relevant to the patent case at hand.  Jt. Ltr. at 4.  However, these requests, which are specific to the elements of BrightEdge's patent infringement case, are not the type of "generalized searches for information" which are discouraged.  *Richmark Corp.*, 959 F.2d at 1475; *see also Pershing Pacific West, LLC v. MarineMax, Inc.*, 2013 WL 941617, at *7 (S.D. Cal. Mar. 11, 2013) (large number of discovery requests, if sufficiently specific and relevant, will weigh in favor of disclosure).

**C.     The Burden of Violation of the Foreign Law**

BrightEdge argue that there is no additional burden that may arise from Searchmetrics' production of the requested information because Searchmetrics has already exported the requested information and used it in the United States, thus it is not subject to foreign data privacy laws. Jt. Ltr. at 3. BrightEdge maintains that Searchmetrics cannot claim that removal of information outside of Germany for purposes of this litigation violates the privacy laws, but Searchmetrics' removal for purposes of targeting U.S. customers did not. *Id.* Since there has already been a violation, there is no additional burden added by production in this case. *Id.* Searchmetrics counters that this analysis misses the mark because the privacy laws apply to data held in Germany, and prevents its transfer outside of the EU, even if the data controller is in the United States. *Id.* at 5. However, this argument is insufficient to carry the burden of showing these laws bar production of the requested discovery. *In re Air Crash at Taipei,* 211 F.R.D. at 377.

Generally, the BDSG prohibits transfer of personal data to any jurisdiction that does not provide data protection rules functionally equivalent to the EU. *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Products Liability*, 2011 WL 5507057, at *3 (S.D. Ill. Nov. 10, 2011). However, exceptions to the data transfer prohibitions exist, such as in the case of litigation. While Searchmetrics has cited to the provisions of the BDSG that prohibit disclosure of personal third-party information, they have failed to address Part I, Section 4c of the BDSG, entitled "Derogations," which provides that the transfer of personal information to countries that do not have the same level of data protection "shall be lawful, if ... the data subject has given his/her consent [or] ... the transfer is necessary or legally required ... for the establishment, exercise or defense of legal claims." German Federal Data Protection Act, BCB1.I 1990 S.2954.

Searchmetrics also cites generally to Directive 95/46/EC of the European Parliament & Counsel of 24 October 1995 on the Protection of Individuals With Regard to the Processing of Personal Data & on the Free Movement of Such Data (the "Directive"). However, under Article 26 the Directive, entitled "Derogations," transfer of personal data to third countries that do not have the same level of data protection is still authorized on the condition that: (a) the data subject has given his consent unambiguously to the proposed transfer … or (d) the transfer is necessary …

1   for the establishment, exercise or defense of legal claims…" Searchmetrics further argues that the
2   German Telecommunications Act ("TKG") applies to personal data in its employee emails
3   because employers permitting employees to use emails for private purposes qualify as
4   telecommunication providers. Jt. Ltr. at 4. But Searchmetrics provides no citation to any relevant
5   section of this Act, or whether relevant exceptions exist. *See AccessData Corp. v. ALSTE*
6   *Technologies GmbH*, 2010 WL 318477, at *2 (D. Utah Jan. 21, 2010) (general objections based
7   on blocking statutes without more are insufficient to sustain claims of privilege).

8   As the party seeking to rely on German and European Union law, it is Searchmetrics'
9   burden to demonstrate that these laws bar production of the documents at issue. *See AstraZeneca*
10  *LP*, 2011 WL 1421800, at * 13 (citing *In re Air Crash at Taipei*, 211 F.R.D. at 377).
11  Searchmetrics is thus required to "provide the Court with information of sufficient particularity
12  and specificity to allow the Court to determine whether the discovery sought is indeed prohibited
13  by foreign law" in order to meet this burden. *Id*. (citing *Alfadda v. Fenn*, 149 F.R.D. 28, 34
14  (S.D.N.Y. 1993). Searchmetrics has failed to demonstrate that providing personal information
15  about its customers and their employees in defense of this patent infringement suit "could…
16  subject [it] to criminal penalties," because it would breach German and EU data privacy laws. *See*
17  *AccessData Corp.*, 2010 WL 318477, at *2. Accordingly, this factor weighs in favor of
18  compelling production.

19  **D.      The Availability of Other Means of Securing the Information**

20  BrightEdge argues that Searchmetrics is the only source from which to obtain the
21  information. Jt. Ltr. at 3. Searchmetrics contends that BrightEdge "has not identified specific
22  relevant information important for its patent infringement claims located in this personal data." *Id*.
23  at 5. Where "the information sought in discovery can easily be obtained elsewhere, there is little
24  or no reason to require a party to violate foreign law." *AstraZeneca*, 2011 WL 1421800, at *14
25  (quoting *In re Air Crash at Taipei*, 211 F.R.D. at 378 (citations omitted)). Here, the focus is
26  whether the documents, if relevant, can be obtained from another source. As the information
27  resides in Searchmetrics' proprietary customer relations database, the Court finds that it cannot.
28  Accordingly, this factor weighs in favor of compelling production.

### E. Whether the Information Originated in the United States

"The fact that all the information to be disclosed [is] located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business." *Richmark*, 959 F.2d at 1475.  BrightEdge argues that this factor weighs in their favor because the information primarily concerns parties and activities in the United States, i.e., Searchmetrics' targeting of U.S. customers. Jt. Ltr. at 3.  BrightEdge contends that the sales activity data it seeks is maintained in Searchmetrics' SugarCRM customer relationship database, which is being accessed and used in the U.S. by Searchmetrics' employees. *Id*. at 2.  Searchmetrics contends that the majority of its information from 2007 to the present originated in Germany.  *Id*. at 5.  To the extent that the database is maintained in Germany, this factor weighs in favor of not ordering disclosure, although it is not determinative.  *In re Air Cargo Shipping Services Antitrust Litig.*, 2010 WL 2976220, at *3 (E.D.N.Y. July 23, 2010).

### F. The Interest of the United States

The United States obviously has a substantial interest in "vindicating the rights of American plaintiffs."  *In re Air Crash at Taipei*, 211 F.R.D. at 379 (citing *Richmark Corp.*, 959 F.2d at 1477).  Conversely, the German interest in enforcing the blocking statute[s] at issue here "is entitled to less deference since it is not a substantive rule of law at variance with the law of the United States, but rather one whose primary purpose is to protect its citizens from discovery obligations in foreign courts."  *In re Air Cargo Shipping Serv. Antitrust Litig.*, 2010 WL 2976220, at *2 (citing *Aérospatiale*, 482 U.S. at 544 n 29).  Accordingly, this factor weighs in favor of compelling production.

### G. Hardship and Likelihood of Compliance

If a foreign company is likely to face criminal prosecution in a foreign country for complying with a United States court order, that is a weighty excuse for nonproduction.  *NML Capital,* 2013 WL 491522, at *11 (citing *Soceite Internationale,* 357 U.S. at 211).  However, [i]n examining the hardship on the party from whom compliance is sought, courts ... look at the likelihood that enforcement of the foreign law will be successful."  *Id.* (citing *Minpeco,* 116 F.R.D. 517, 526 (1987).  If the likelihood that the party resisting compliance will be prosecuted

8

and convicted is "slight and speculative" a court can order disclosure. *Id*. (citing *United States v. First Nat'l City Bank*, 396 F.2d 897, 905 (2d Cir. 1968); *accord Gucci Am.,* 2010 WL 808639 at *6). Here, Searchmetrics has not provided any argument as to whether parties in its position have been fined or prosecuted for disclosing personal data under similar circumstances, this factor weighs in favor of compliance. *See Gucci Am.*, 2010 WL 808639 at *7 (Courts have required that the party resisting discovery provide information on the likelihood that the party would be prosecuted for producing the requested documents). Given that there exist at least two viable exceptions to the privacy laws Searchmetrics relies upon, this factor weighs in favor of compelling production.

Last, if a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance with the order. *Richmark*, 959 F.2d at 1478. As discussed above, because there exist a number of possible ways that Searchmetrics could produce the information without violating European or German privacy laws, this factor weighs in favor of compelling production.

## CONCLUSION

Having weighed the relevant factors, the Court finds that they weigh in favor of compelling Searchmetrics to supplement its interrogatory responses and document production to include information and documents it withheld on the basis of international privacy protection laws. Accordingly, the Court GRANTS the motion to compel.

**IT IS SO ORDERED.**

Dated: August 13, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge