UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTEDGE TECHNOLOGIES, INC., <br><br>　　　　　　Plaintiff, <br><br>　v. <br><br>SEARCHMETRICS, GMBH., et al., <br><br>　　　　　　Defendants. | Case No. 14-cv-01009-WHO (MEJ) <br><br>**ORDER RE: MOTION TO MODIFY THE STIPULATED PROTECTIVE ORDER** <br><br>Re: Dkt. No. 112 |

## INTRODUCTION

In this patent infringement case, the parties previously entered into a stipulated protective order regarding the disclosure and use of discovery materials (the "Protective Order"). Dkt. No. 58. Plaintiff BrightEdge Technologies, Inc. ("BrightEdge") now seeks to modify the Protective Order to allow use of confidential documents in collateral litigation. Dkt. No. 112. Defendants Searchmetrics GmbH and Searchmetrics, Inc. ("Searchmetrics") have filed an Opposition (Dkt. No. 115) and BrightEdge filed a Reply (Dkt. No. 116). The Court finds this matter suitable for disposition without oral argument and VACATES the January 22, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

BrightEdge provides customers with search engine optimization ("SEO") and analytical tools. Sec. Am. Compl. ¶ 4, Dkt. No. 19. It accuses Searchmetrics, a competitor in the field of SEO technology, of directly infringing certain BrightEdge patents related to SEO technology. *Id.* ¶¶ 5-43. On September 3, 2014, the Court issued the Protective Order, which states, "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation."

Protective Order at 9.

On November 21, 2014, the presiding judge in this matter, the Honorable William H. Orrick, stayed the case until June 1, 2015. *Order Staying Case Pursuant to the Parties' Partial Agreement* ("Stay Order"), Dkt. No. 109. As part of the Stay Order, the Court provided a procedure by which the parties may seek to use documents produced in this action in any other proceeding. *Id.* at 3-4. The Stay Order provides as follows:

> If a receiving party seeks to use information or documents produced in this action as Protected Material under the Stipulated Protective Order in any other proceeding, including any Trial proceeding brought by Searchmetrics before the Patent Trial and Appeal Board or in any state court action, the receiving party must first disclose in writing to the producing party the specific information or documents sought to be used and the purpose of the use of the information or documents. The parties will meet and confer within 14 days of receipt of the receiving party's written request. The producing party may either (1) agree to use of the information or documents in the other proceeding or (2) refuse use of the information or documents in the other proceeding. If the producing party refuses use, the receiving party must then file a motion before Magistrate Judge James to seek permission to modify the Stipulated Protective Order to allow the use of the specifically identified information or documents in the other proceeding. This procedure must be followed each time a party seeks to use information or documents, which were produced in this action by another party as Protected Material under the Stipulated Protective Order, in any other proceeding.

*Id.*

Pursuant to the procedure in the Stay Order, on November 27, 2014, counsel for BrightEdge sent counsel for Searchmetrics a list of 46 documents that it sought to use in *BrightEdge Techs., Inc. v. Gabriel Martinez*, 113-CV-256794 (Cal. Sup. Ct. Santa Clara) (the "*Martinez* case"). Swenson Decl., Ex. C at 5-8, Dkt. No. 112-1. Gabriel Martinez is a former BrightEdge employee who now works at Searchmetrics. Mot. at 6. In the *Martinez* case, filed November 26, 2013, BrightEdge alleges misappropriation of trade secrets and breach of contract. Opp'n at 1. BrightEdge has not yet brought any claims against Searchmetrics in that case. *Id.*

For each document in its request, BrightEdge stated its "Purpose of Use in Other Proceeding" as follows: "Evidence that Searchmetrics and its employees misappropriated and used BrightEdge's confidential and/or trade secret information and committed other related state law violations." Swenson Decl., Ex. C at 6-8. The parties met and conferred on December 11, 2014,

2

but were unable to reach an agreement. *Id.* ¶ 5.

In the present Motion, BrightEdge seeks permission to use 37 documents in the *Martinez* case that were already produced by Searchmetrics in this case. The documents consist of emails to and/or from: (1) Gabriel Martinez, (2) Searchmetrics employees BrightEdge anticipates naming in the *Martinez* case, and (3) Searchmetrics' founder and CEO. Mot. at 6-8. BrightEdge argues the documents are highly relevant to the trade secret misappropriation claim against Martinez, as well as collateral proceedings arising from an amended complaint that it intends to file adding Searchmetrics and its employees as defendants to the *Martinez* case. *Id.* at 5.

## LEGAL STANDARD

District courts have broad discretion to decide when a protective order is appropriate and the degree of protection required. Fed. R. Civ. P. 26(c). A district court also has inherent authority to grant a motion to modify a protective order where good cause is shown. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). The party asserting good cause bears the burden of showing that specific prejudice or harm will result if the motion is not granted. *Id.* at 1210-11.

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (citing *Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)). While a motion to modify a protective order should not be granted automatically, "where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Id.*

In determining whether to grant a motion to modify a protective order, the court must first consider whether the moving party has demonstrated "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id.* This inquiry turns on "the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings." *Id.* (internal citations omitted). The court next weighs the

"countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. "Reliance will be less with a blanket [protective] order" because such an order does not require the "good cause" showing required by Rule 26(c) with respect to any particular document. *Id.* (quoting *Beckman*, 966 F.2d at 476). Where a blanket protective order is at issue, "any legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Id.* (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)).

## DISCUSSION

**A.     Relevance**

In its Motion, BrightEdge argues that each of the 37 documents are relevant in the *Martinez* case because they suggest that Searchmetrics and its employees used improper means to acquire knowledge of BrightEdge's trade secret information. Mot. at 6. BrightEdge maintains that 23 of the documents are directly relevant to the trade secret claim against Martinez, five documents are relevant to the trade secret misappropriation claims that it intends to bring against Cullen McAlpine (another former BrightEdge employee who is now employed at Searchmetrics), six documents are relevant to the trade secret misappropriation claims that it intends to bring against Shaun Silver (Director of Sales at Searchmetrics), and all 37 documents are relevant to the trade secret misappropriation claims that it intends to bring against Searchmetrics. *Id.* at 6-8.

In response, Searchmetrics maintains that it is unclear where and how BrightEdge intends to use the 37 protected documents, as the proposed modification to the Protective Order would allow it to use the 37 documents in "any actual or potential collateral litigation." Opp'n at 4-5 (quoting Proposed Amended Protective Order, Dkt. No. 112-3). Searchmetrics notes that this proposed revision is in direct conflict with the relief requested by BrightEdge's Motion, which seeks only to use the documents in the *Martinez* case. As BrightEdge provides no information regarding other collateral proceedings in which it contemplates using the documents, Searchmetrics contends it is "difficult or impossible to evaluate the relevance of the documents to the ambiguous collateral proceedings." *Id.* at 5.

To the extent that BrightEdge seeks to use the 37 protected documents only in the *Martinez* case, Searchmetrics argues that BrightEdge's own descriptions of certain of these documents show that they have no relevance to Mr. Martinez. *Id.* (citing Smith Decl., Ex. 2, Dkt. No. 111 (Index to Exhibits), stating that Exs. 4-6, 8-10, 29, and 36-39 are relevant to a "future trade secret case")). To the extent that BrightEdge intends to use certain documents in potential claims to be filed against Searchmetrics and/or other Searchmetrics employees, there is no current collateral proceeding against Searchmetrics or those other Searchmetrics employees, and thus it is premature to consider use of these documents in a case not yet filed. *Id.* Searchmetrics also notes that some of the documents are dated well before Mr. Martinez joined Searchmetrics, and BrightEdge has therefore failed to show how these documents could be relevant to the *Martinez* case. *Id.* (citing Smith Decl., Exs. 9-10, 23-24, 37-38).

Upon review of the parties' arguments, the Court finds that BritghtEdge has adequately established the relevance of the protected discovery to the *Martinez* case. Of approximately 150,000 documents produced by Searchmetrics in this litigation, BrightEdge seeks to use 37 emails to and/or from Searchmetrics employees. BrightEdge intends to use these documents to aid in amending its complaint in the *Martinez* case, in which it intends to bring trade secret and other state law claims against Searchmetrics and two additional employees. BrightEdge has provided specificity regarding the relevance of each of the 37 documents, which relate to Searchmetrics' alleged direct use of BrightEdge's trade secret information.[1] *See* Smith Decl., Ex. 2 (Index detailing the relevance of the 37 identified documents). Accordingly, this factor weighs in favor of modification. *See CBS Interactive*, 257 F.R.D. at 205 (permitting modification of protective order in patent case where plaintiff sought "specific modification of one clause of the protective order to permit it to use discovery information from this litigation for the purposes of initiating

---

[1] Because the relevant documents are under seal, the Court need not enumerate or specifically describe the discovery materials herein. *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal. 2009) (citing *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) ("While this Court has recognized that the common law right of access creates a strong presumption in favor of public access to materials submitted as evidence in open court, this presumption should not apply to materials properly submitted to the court under seal."); *Phillips*, 307 F.3d at 1213 (holding that the usual presumption of the public's right of access is rebutted when a party attaches a sealed discovery document to a non-dispositive motion)).

collateral litigation.").

**B.     Countervailing Interests**

The court next weighs the "countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Foltz*, 331 F.3d at 1133. "Reliance will be less with a blanket [protective] order" because such an order does not require the "good cause" showing required by Rule 26(c) with respect to any particular document. *Id.* (quoting *Beckman*, 966 F.2d at 476). Where a blanket protective order is at issue, "any legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Id.* (quoting *United Nuclear*, 905 F.2d at 1428).

Here, the disclosure sought is not as broad as full public disclosure; BrightEdge seeks a specific modification of one clause of the Protective Order to permit it to use documents from this litigation in pending collateral litigation. All other clauses and provisions of the Protective Order will stand, including the disclosure restrictions of highly confidential materials to attorneys' eyes only.

Searchmetrics argues it is premature to modify the Protective Order, as there is no pending collateral litigation against it or the two additional Searchmetrics employees BrightEdge intends to add to the *Martinez* case. The absence of a pending suit against the target party is an important factor in cases denying a motion to modify a protective order. *See, e.g.*, *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 555-56 (S.D.N.Y. 1985) ("One explanation for these decisions is that the absence of any pending litigation against the target makes it less likely that modification of the protective order will avoid costly and repetitive discovery."). However, BrightEdge has already identified the claims it intends to bring and the relevance of the documents to those claims. BrightEdge first notified Searchmetrics and Judge Orrick of its intent to bring these claims on November 12, 2014, when it stated that it would drop them from the proposed amended complaint in this federal action. Swenson Decl., Ex. B (Hr'g Tr. Nov. 12, 2014), Dkt. No. 112-01 ("We are willing to take off all of the state law issues at this time that we've requested amendment, and we will proceed in State Court with those claims at this time."). Because

BrightEdge has provided the specific claims it intends to bring in the *Martinez* case, and has identified the relevance of the 37 documents it seeks to use, the Court finds the lack of pending collateral litigation against Searchmetrics and its two employees holds little weight in the analysis. *See CBS Interactive*, 257 F.R.D. at 205 (granting modification of protective order where there was no pending collateral litigation, but plaintiff asserted it needed the discovery to pursue claims for trade secret misappropriation in state court).

Moreover, Searchmetrics previously argued that BrightEdge's trade secret claims against Searchmetrics must not be a part of this case but rather must be filed in state court. BrightEdge moved to amend the complaint in this case to bring trade secret misappropriation and other state law claims against Searchmetrics and two of its employees. Dkt. No. 80. Searchmetrics opposed this motion (Dkt. No. 92), arguing that BrightEdge's trade secret claims must be brought in the *Martinez* case: "BrightEdge's proposed state law claims against Searchmetrics are part of *the same case or controversy* in BrightEdge's case against Mr. Martinez," and "[a]llowing BrightEdge's state law claims against Mr. Martinez and against Searchmetrics to proceed on different tracks in state court and federal court is highly inefficient." Dkt. No. 92-3 at 11 (emphasis in original). Searchmetrics repeated this in its reply in support of its motion to stay this case:

> Such state law claims (though they are baseless) are more appropriately added (if at all) to the pending state trade secret misappropriation case against Searchmetrics' employee Gabriel Martinez, as BrightEdge's allegations against Searchmetrics arise from Mr. Martinez's alleged actions and thus share a common nucleus of fact with BrightEdge's claims against Mr. Martinez.

Dkt. No. 91 at 12. At the November 12, 2014 hearing, Searchmetrics agreed that BrightEdge should have the option to pursue its trade secret misappropriation and related state law claims either in this action or in State Court. Swenson Decl., Ex. 1 (Tr. Hr'g Nov. 12, 2014) at 18:17-20 ("They want to be able to have the option of moving forward here or filing elsewhere, and we think it should be one or the other when a stay is issued."). Judge Orrick agreed: "I wouldn't take supplemental jurisdiction on the state law claims because I think they are properly – they are more properly in the State Court case as opposed to this one." *Id.* at 24:7-10. Despite previously expressing that BrightEdge should pursue its trade secret claims in state court, and Judge Orrick

7

supporting that position by providing a procedure for using documents produced in this case to do so, Searchmetrics now attempts to prohibit BrightEdge from using documents it has already obtained to bring the trade secret claims in state court. Searchmetrics cannot have it both ways.

Searchmetrics next argues that BrightEdge is attempting to enlist this Court's assistance in circumventing a state court order denying BrightEdge's motion to compel production from Searchmetrics. Opp'n at 6. Specifically, Searchmetrics notes that in the *Martinez* case, BrightEdge issued a subpoena with 57 requests for document production from Searchmetrics, but that request was denied. *Id.* at 7. However, while it appears that the state court denied BrightEdge's motion to compel production from Searchmetrics as a *third party*, there is nothing preventing BrightEdge from serving discovery on Searchmetrics as a *party* to obtain the same information. "Whether a collateral litigant would ultimately obtain access to the discovery materials is not something this court can even determine." *CBS Interactive*, 257 F.R.D. at 205-06 (citing *Foltz*, 331 F.3d at 1133; *Superior Oil Co. v. Am. Petrofina Co. of Tex.*, 785 F.2d 130, 130 (5th Cir. 1986) ("Questions of the discoverability in the state litigation of the materials discovered in the federal litigation are, of course, for the state courts")).

Searchmetrics also argues that German and European Union privacy laws prohibit disclosure of personal data, and the decision for production of such data in this patent case cannot justify production of and use of the information in other unrelated and unidentified litigation.[2] Opp'n at 8. Instead, Searchmetrics contends that the court presiding over the collateral litigation would need to perform a case-specific, multi-factor balancing test with respect to the specific collateral litigation to determine whether the information should be produced. *Id.* However, this Court previously held that the German and European privacy laws do not prohibit disclosure of Searchmetrics' documents at issue here. Dkt. No. 56 (Aug. 13, 2014 Discovery Order). Searchmetrics has already produced the 37 documents, and it does not identify any personal information in the 37 documents that warrants protection under the privacy laws. Further, the only contemplated defendants are Searchmetrics and its employees. It is unclear how use of the

---

[2] Searchmetrics GmbH is a German limited liability company with its principal place of business in Berlin, Germany. SAC ¶ 2.

already-disclosed documents would violate privacy laws.

Finally, Searchmetrics notes that it produced approximately 150,000 documents in reliance on the Protective Order, which specifically states that the protected documents would be used in this case only. Opp'n at 10. As Searchmetrics and BrightEdge are competitors, Searchmetrics maintains that its reliance interest is heightened, thus weighing in favor of the continued protection of Searchmetrics' information. *Id.* "Ninth Circuit precedent also looks to the needs of parties engaged in pending litigation and, in particular, the reliance interests on the protective order of the party opposing its modification." *CBS Interactive*, 257 F.R.D. at 206 (citing *Beckman*, 966 F.2d at 475; *Foltz,* 331 F.3d at 1132 ("modification should generally be granted only where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy.")). Here, the Court finds that Searchmetrics has not shown that its privacy interests will be affected or harmed by the disclosure of any particular documents produced in discovery in the *Martinez* case. BrightEdge has already obtained the documents and seeks to use them only against Searchmetrics and its employees. Further, there is no indication that Searchmetrics' information would be exposed to any third parties; the documents would have equally restricted access under the protective order in the *Martinez* case, and the parties could modify that protective order if needed. "Mere reliance on a blanket protective order does not justify a refusal to modify it when a reasonable request for disclosure has been made." *Id.* (citing *Beckman*, 966 F.2d at 476).

## CONCLUSION

Based on the analysis above, BrightEdge's Motion to Modify the Stipulated Protective Order is **GRANTED**. The Protective Order entered on September 3, 2014 will be modified to permit use of the 37 documents solely in the *Martinez* case. The parties shall meet and confer and file a stipulation as an addendum to the Protective Order.

**IT IS SO ORDERED.**

Dated: January 13, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge